**STATE OF MINNESOTA**
**County of Hennepin**

Judicial District:
Case Type:

**DISTRICT COURT**
Fourth
Civil Other/Misc.

Tasha Marks
*Plaintiff*

vs.

G.C. Services L.P.
*Defendant*

# SUMMONS

1. **YOU ARE BEING SUED**. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights.  You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.**  You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

> 619 South Tenth Street
> Suite 301
> Minneapolis, MN 55404

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint.  If you do not want to contest the claims stated in the



EXHIBIT
A

complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

**5. LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

**6. ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: May 4, 2017

s/ David J.S. Madgett
David J.S. Madgett (#0390494)
619 South Tenth Street
Suite 301
Minneapolis, MN 55404
(612) 470-6529
dmadgett@madgettlaw.com

ATTORNEY FOR PLAINTIFF

**STATE OF MINNESOTA**
**County of Hennepin**

Judicial District:
Case Type:

**DISTRICT COURT**
Fouth
Civil Other/Misc.

---

Tasha Marks
*Plaintiff*

vs.

G.C. Services L.P.
*Defendant*

**COMPALINT**

---

PLAINTIFF, as and for her causes of action (i.e., violations of the Telephone Consumer Protection Act, the Minnesota Automatic Dialing-Announcing Devices Act, and the Fair Debt Collection Practices Act) against the above-named defendant, states and alleges as follows:

**Introduction**

1.      The following case alleges prolonged harassment by defendant, G.C. Services L.P. (hereinafter "G.C. Services").  On an ongoing basis Defendant used an automatic telephone dialing system (hereinafter ATDS) to repeatedly call and harass Ms. Marks on her personal cell phone despite Ms. Marks repeatedly requesting that Defendant cease its calling. During several of the calls, Defendant's representatives illegally harassed Ms. Marks to the point where she developed anxiety when dealing with or even thinking about financial matters. Plaintiff brings this action in order to put a stop to Defendant's illicit conduct.

1

## Statement of Jurisdiction

2.     This Court has Jurisdiction over the subject matter of this action pursuant to Minn. Stat. §484.01, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 (b) (3), and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692k(d).

## Venue

3.     Venue is proper pursuant to Minn. Stat. §542.09 because the cause of action arose within the State of Minnesota and the County of Hennepin.

## Parties

4.     Plaintiff Tasha Marks is an adult resident of Hennepin County, Minnesota.

5.     Defendant G.C. Services is a foreign company registered to conduct business in the state of Minnesota.

6.     Plaintiff is informed and believes, and thereon alleges, that at all times relevant Defendant conducted business in the State of Minnesota and in the County of Hennepin.

## Facts

7.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39), a "subscriber" as defined by Minn. Stat. §325E.26 subd. 5, and a "consumer" as defined by 15 U.S.C. §1692a(3).

8.     Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39), a "caller" as defined by Minn. Stat. §325E.26 subd. 3, and a "debt collector" as defined by 15 U.S.C. §1692a(6).

9.     Plaintiff's current telephone number, (xxx) xxx-6362, is assigned to a "cellular telephone service" as that term is used in 47 U.S.C. § 227 (b)(1)(A)(ii).

10.    The alleged debt owed by Plaintiff is a "debt" as defined by 15 U.S.C. §1692 a(5).

2

11.     The calls mentioned herein constitute "communications" as defined by 15 U.S.C. §1692a(2).

12.     In January of 2017, Ms. Marks began receiving a series of letters and harassing phone calls from a collection company called GC Services L.P.

13.     G.C. Services, L.P. claimed to be collecting a debt owed by Ms. Marks to the U.S. Department of Education.

14.     According to a collection letter sent by G.C. Services, the company claimed that Ms. Marks owed the sum of $16,917.20.

15.     In various phone calls to Ms. Marks representatives of G.C. services claimed the same.

16.     While an undergraduate, Ms. Marks indeed took out various undergraduate loans in the amount of approximately $37,820.00.

17.     The loans in question were underwritten by the U.S. Department of Education and serviced by various companies including ACS Education Services and Great Lakes Higher Education & Affiliates.

18.     Although Plaintiff wished to pay the loans in question, Plaintiff was unable to do so given these previously unforeseen financial difficulties.

19.     Although Ms. Marks struggled to repay the loans in question, but eventually repaid over $25,128.64.

20.     Based on her accounting Ms. Marks was under the belief that she owed approximately $12,500.00 plus some unpaid interest.

21.     Ms. Marks reviewed her records in the National Student Loan Database where she confirmed she owed $12,778.00 plus $775.00 in interest.

22.    Ms. Marks repeatedly informed G.C. Services that the figure that the company was trying to collect was incorrect according to federal records and that she wished any future communications to be in writing.

23.    Ms. Marks expressly asked G.C. Services to stop calling on at least one occasion.

24.    In response the company stated that it would continue to call despite Ms. Marks's wishes.

25.    The calls did not stop.

26.    G.C. Services continued to place unwanted calls to Ms. Marks's personal cell phone.

27.    A pause or delay accompanied many of these calls whereby a representative was not immediately available.

28.    In each of the connected calls these calls Ms. Marks reiterated the came concern that the figure debt was incorrect.

29.    Eventually a representative from G.C. Services informed Ms. Marks that G.C. Services was preparing a lawsuit that would be served on Ms. Marks.

30.    In response Ms. Marks filed a formal dispute with the company and with the Minnesota Attorney General's office.

31.    Ms. Marks was so concerned that she would be sued that she mailed her documents to G.C. services next-day-air.

32.    On numerous occasions Plaintiff explained her financial situation and apologized for being unable to pay the debt in question.

33.    The calls in question appeared to originate from at least three separate lines and, in some cases, appeared as blocked or unknown calls.

34.    Upon information and belief, Defendant utilizes an ATDS to collect alleged debts from consumers.

4

35.     On several occasions Defendant's auto-dialing system would dial Plaintiff; when Plaintiff answered these phone calls a representative was entirely unavailable resulting in a period of dead air (hereinafter "dead air calls").

36.     On other occasions when Plaintiff answered these calls a pre-recorded message came on the line.

37.     Plaintiff is informed and believes, and thereon alleges, that said phone calls were made to Plaintiff's cellular telephone via an "automatic telephone dialing system" as defined by 47 U.S.C. § 227 (a)(1).

38.     Plaintiff is informed and believes, and thereon alleges, that these telephone calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

39.     Defendant placed or caused to be placed these telephone calls in violation of 47 U.S.C. § 227(b)(1).

40.     Plaintiff is informed and believes, and thereon alleges, that during these telephone calls Defendant used an "automatic dialing-announcing device" as defined by Minn. Stat. §325.26 subd. 2.

41.     Plaintiff is informed and believes, and thereon alleges, that Plaintiff did not request, consent to, permit, or authorize receipt of said messages pursuant to Minn. Stat. §325E.27(a).

42.     Defendant placed or caused to be placed these telephone calls in violation of Minn. Stat. §325E.27.

43.     On multiple occasions, Plaintiff requested that Defendant stop calling her, yet the calls in question continued.

44.   By failing to stop calling after being requested to do so, Defendant violated 15 U.S.C. § 1692d.

45.   By placing harassing dead air calls to Plaintiffs cell phone, Defendant violated 15 U.S.C. § 1692d.

46.   On one occasion, Plaintiff informed Defendant's representatives she did not believe the debt balance was correct and further informed Defendant that she was unable to pay the debt in question.

47.   In response, Defendant's representatives informed her that the debt would continue to be reported to consumer reporting agencies as due and owing.

48.   Upon information and belief, Defendant never furnished information regarding Plaintiff to any consumer reporting agency.

49.   By telling Plaintiff that it would furnish information about her to the consumer reporting agencies when it had no intention to do so, Defendant violated 15 U.S.C. §§ 1692e(5) & (10).

50.   By failing to deliver the disclosures mandated by 15 U.S.C. §1692g Defendant violated the subsection.

51.   As a result of Defendant's conduct, Plaintiff suffered from anger, frustration, anxiety, and humiliation.

## Specific Claims

Count I - Negligent Violations of the Telephone Consumer Protection Act 47 U.S.C. § 227 Et Seq.

52.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

53.     The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

54.     As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq, Plaintiff is entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

55.     Plaintiff is also entitled to seek injunctive relief prohibiting such conduct in the future.


Count II – Knowing and/ or Willful Violations of the Telephone Consumer Protection Act 47 U.S.C. § 227 Et Seq.


56.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

57.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/ or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

58.     As a result of Defendant's knowing and/ or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).


Count III- Violation of the Minnesota Automatic Dialing-Announcing Devices Act

Minn. Stat. §325E.26-31

59.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

60.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the Minn. Stat. §325E.27.

61.     Pursuant to Minn. Stat. §325E.31, Defendant is subject to a private right of action under Minn. Stat. §8.31, and is subject to remedies including damages, reasonable costs and disbursements, reasonable attorney's fees, and injunctive relief.

## Count IV– Violation of Fair Debt Collection Practices Act

15 U.S.C. § 1692 *et. seq.*

62.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

63.     The aforementioned conduct include multiple and numerous violations of the Fair Debt Collection Practices Act by Defendants including, but not limited to violations 15 U.S.C. §§ 1692d, 1692e(1), 1692e(5), 1692e(10), and 1692g.

**Jury Demand**

64.     Plaintiff hereby demands a trial by jury.

**Prayer for Relief**

8

WHEREFORE, Plaintiff, Tasha Marks, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

a.    All actual compensatory damages suffered;

b.    Statutory damages of $500.00 per violation, pursuant to 47 U.S.C. §227(b)(3)(B);

c.    Statutory damages of $1,500.00 per violation, pursuant to 47 U.S.C. §227(b)(3)(C);

d.    Statutory damages in an amount up to $1,000.00, pursuant to 15 U.S.C. §1692k(a)(2)(A);

e.    injunctive relief prohibiting such conduct in the future;

f.    reasonable attorney's fees, litigation expenses, and cost of suit; and

g.    Any other relief deemed appropriate by this Honorable Court.

Dated: May 4, 2017        Respectfully Submitted,

MADGETT LAW, LLC

s/ David J.S. Madgett
David J.S. Madgett (#0390494)
619 South Tenth Street
Suite 301
Minneapolis, MN 55404
(612) 470-6529
dmadgett@madgettlaw.com

ATTORNEY FOR PLAINTIFF

**Acknowledgement**

9

Plaintiff acknowledges that, pursuant to Minn. Stat. Sec. 549.21 sub. 2, the Court in its discretion may award costs, disbursements, reasonable attorney's fees and witness fees to the parties against whom costs, disbursements, reasonable attorney's fees and witness fees were charged in bad faith.

Dated: May 4, 2017           By: /s/ David J.S. Madgett
                                     David J.S. Madgett
                                     ATTORNEY FOR PLAINTIFF

10

STATE OF MINNESOTA
County of Hennepin

Judicial District:
Case Type:

DISTRICT COURT
Fourth
Civil Other/Misc.

---

Tasha Maks
*Plaintiff*

vs.

G.C. Services L.P.
*Defendant*

# AMENDED COMPLAINT

---

PLAINTIFF, as and for her causes of action against the above-named Defendant, states and alleges as follows:

## Introduction

1.      The following case alleges prolonged harassment of Plaintiff by Defendant G.C. Services L.P. (hereinafter "G.C. Services") regarding a debt that Plaintiff does not owe. Plaintiff has repeatedly notified Defendant that she is a victim of identity theft, that the debt in question was incorrectly calculated, and that she wishes no further contact from Defendant beyond an accounting of the alleged debt. Despite this, Defendant has repeatedly ignored Plaintiff's requests and has instead continued to collect the debt in question without regard to Plaintiff's situation or requests.  More specifically, on an ongoing basis Defendant used an automatic telephone dialing system (hereinafter ATDS) to repeatedly call and harass Ms. Maks on her personal cell phone. During several of the calls, Defendant's representatives illegally harassed

2

Ms. Maks to the point where she developed anxiety when dealing with or even thinking about financial matters. Plaintiff brings this action in order to put a stop to Defendant's illicit conduct.

## Statement of Jurisdiction & Venue

2.     This Court has Jurisdiction over the subject matter of this action pursuant to Minn. Stat. §484.01, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 (b) (3), and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692k(d).

3.     Venue is proper pursuant to Minn. Stat. §542.09 because the cause of action arose within the State of Minnesota and the County of Hennepin.

## Parties

4.     Plaintiff Tasha Maks is an adult resident of Hennepin County, Minnesota.

5.     Defendant G.C. Services is a foreign debt collection company registered to conduct business in the state of Minnesota.

6.     Plaintiff is informed and believes, and thereon alleges, that at all times relevant Defendant conducted business in the State of Minnesota and in the County of Hennepin.

## Facts

7.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39), a "subscriber" as defined by Minn. Stat. §325E.26 subd. 5, and a "consumer" as defined by 15 U.S.C. §1692a(3).

8.     Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39), a "caller" as defined by Minn. Stat. §325E.26 subd. 3, and a "debt collector" as defined by 15 U.S.C. §1692a(6).

9.     Plaintiff's current telephone number, (xxx) xxx-6362, is assigned to a "cellular telephone service" as that term is used in 47 U.S.C. § 227 (b)(1)(A)(ii).

3

10.     The alleged debt owed by Plaintiff is a "debt" as defined by 15 U.S.C. §1692 a(5).

11.     The calls mentioned herein constitute "communications" as defined by 15 U.S.C. §1692a(2).

12.     From 2005 to 2007, Ms. Maks was a student at St. Mary's University located in Winona, Minnesota.

13.     While a student at St. Mary's, Ms. Maks incurred $9,938.00 in federally secured student loans.

14.     The student loans incurred by Ms. Maks consisted of subsidized and unsubsidized Stafford loans; the interest rate on Ms. Maks' Stafford loans is believed to be variable yet capped by law at 8.25%.

15.     Ms. Maks suffers from a severe learning disability, which eventually caused her to withdraw from the university.

16.     Sometime thereafter, an unknown individual took out at least two additional student loans in Ms. Maks' name without her authorization or knowledge.

17.     These two fraudulent loans are believed to be issued by U.S Bank, serviced by Great Lakes Higher Education Corporation, and guaranteed by the U.S. Department of Education.

18.     The fraudulent loans were originated by an unknown individual associated with a program identified as Empire Beauty School, and the same program is believed to have retained the proceeds of the loans in question.

19.     The loans in question were underwritten by the U.S. Department of Education and serviced by various companies, including ACS Education Services and Great Lakes Higher Education Company.

20.     Plaintiff has contacted Defendants, the former loan servicer, the Department of Education, Empire Beauty School, and even the Minnesota Attorney General's Office regarding these fraudulent loans and accounting irregularities related to the account.

21.     None of these organizations have been able to identify or produce a promissory note or other documentation regarding these loans.

22.     Nonetheless, Defendant has continued to engage in a relentless collection campaign demanding payment for the loans in question.

23.     Specifically, in January of 2017, Ms. Maks began receiving a series of letters and harassing phone calls from a collection company called G.C. Services L.P.

24.     In the calls G.C. Services, L.P. indicated it was collecting a debt owed by Ms. Maks to the U.S. Department of Education.

25.     According to a collection letter sent by G.C. Services, the company claimed that Ms. Marks owes $17,004.00.

26.     In various phone calls to Ms. Maks, representatives of G.C. Services claimed the same.

27.     Ms. Maks repeatedly informed the Defendant both orally and in writing that debt in question was due to identity theft and was not correctly calculated.

28.     Ms. Maks further informed Defendant that she and her former husband have incurred tax intercepts of at least $43,000.00, which she was told was previously applied to the loan balance.

29.     Ms. Maks informed Defendant that its demand of $17,004.00, plus over $43,000.00 previously paid by Ms. Maks and her former husband, would mean that Ms. Maks was being asked to repay over $60,000.00, for $9,938.00 in student loans incurred less than 10 years prior.

30.     If G.C. Services' claim were true interest rate inclusive of fees on the loans in question would exceed the maximum legal amount of 8.25%.

5

31.     In response Defendant indicated that the payment demanded only related to Ms. Maks'
undisputed loans and that the figure was correctly calculated.

32.     Defendant further sated that Ms. Maks would have to take her accounting issue up
directly with the Department of Education.

33.     Ms. Maks thereafter contacted the Department of Education, which informed Ms. Maks
that she would have to contact Defendant.

34.     Ms. Marks thereafter reviewed her records in the National Student Loan Database, where
she confirmed she owed $12,778.00 plus $775.00 in interest.

35.     Ms. Marks again informed G.C. Services that the figure that the company was trying to
collect was incorrect according to federal records and that she wished any future
communications to be in writing.

36.     Despite this, Ms. Maks continued to receive calls demanding payment.

37.     During at least one call, Ms. Maks asked Defendant when her previous tax intercepts or
garnishments allegedly taken to repay the loans in question were applied to her account.

38.     Defendant responded that G.C. Services was "holding the money" and that the money
would not be applied to her loans until Plaintiff agreed to a payment plan with G.C. Services.

39.     Plaintiff indicated that she would under no circumstances enter into a repayment plan
until the accounting irregularities with her loans were addressed and until she was provided with
copies of the promissory notes for the loans Defendant was allegedly collecting.

40.     Defendant responded that Plaintiff was not entitled to the promissory notes and that G.C.
Services was not in possession of the notes in question and that the notes were held "in
Washington D.C."

41.     Ms. Maks expressly asked G.C. Services to stop calling her on at least one occasion.

42.     In response the company stated that it would continue to call despite Ms. Maks's wishes.

43.     Indeed, the calls did not stop; G.C. Services continued to place unwanted calls to Ms. Maks's personal cell phone.

44.     The calls in question appeared to originate from at least three separate lines and, in some cases, appeared as blocked or unknown calls.

45.     On many of these calls, there was a pause or delay, whereby a representative was not immediately available.

46.     Upon information and belief, Defendant utilizes an ATDS to collect alleged debts from consumers.

47.     On several occasions Defendant's auto-dialing system would dial Plaintiff; when Plaintiff answered these phone calls a representative was entirely unavailable resulting in a period of dead air (hereinafter "dead air calls").

48.     On other occasions when Plaintiff answered these calls a pre-recorded message came on the line.

49.     Plaintiff is informed and believes, and thereon alleges, that said phone calls were made to Plaintiff's cellular telephone via an "automatic telephone dialing system" as defined by 47 U.S.C. § 227 (a)(1).

50.     Plaintiff is informed and believes, and thereon alleges, that these telephone calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

51.     Defendant placed or caused to be placed these telephone calls in violation of 47 U.S.C. § 227(b)(1).

52.     Plaintiff is informed and believes, and thereon alleges, that during these telephone calls Defendant used an "automatic dialing-announcing device" as defined by Minn. Stat. §325.26 subd. 2.

53.     Plaintiff is informed and believes, and thereon alleges, that Plaintiff did not request, consent to, permit, or authorize receipt of said messages pursuant to Minn. Stat. §325E.27(a).

54.     Defendant placed or caused to be placed these telephone calls in violation of Minn. Stat. §325E.27.

55.     By failing to stop calling after being requested to do so, Defendant violated 15 U.S.C. § 1692d.

56.     By placing harassing dead air calls to Plaintiffs cell phone, Defendant violated 15 U.S.C. § 1692d.

57.     During one call a representative from G.C. Services informed Ms. Maks that G.C. Services was preparing a lawsuit that would be served on Ms. Maks.

58.     In response Ms. Maks filed a formal dispute with the company and with the Minnesota Attorney General's office.

59.     G.C. Services' relentless harassment of Ms. Maks including their repeated threats of suit made Ms. Macks so concerned she would be sued that she mailed a written dispute statement and dispute to G.C. Services via next-day-air.

60.     Defendant's representatives repeatedly informed Ms. Maks that the debt would continue to be reported to consumer reporting agencies as due and owing.

61.     Upon information and belief, Defendant never furnished information regarding Plaintiff to any consumer reporting agency.

62.     By telling Plaintiff that it would furnish information about her to the consumer reporting agencies when it had no intention to do so, Defendant violated 15 U.S.C. §§ 1692e(5) & (10).

63.     By failing to deliver the disclosures mandated by 15 U.S.C. §1692g Defendant violated the subsection.

64.     As a result of Defendant's conduct, Plaintiff suffered from anger, frustration, anxiety, and humiliation.

## Specific Claims

Count I - Negligent Violations of the Telephone Consumer Protection Act 47 U.S.C. § 227 Et Seq.

65.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

66.     The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

67.     As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

68.     Plaintiff is also entitled to seek injunctive relief prohibiting such conduct in the future.

Count II – Knowing and/ or Willful Violations of the Telephone Consumer Protection Act 47 U.S.C. § 227 Et Seq.

9

69.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

70.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/ or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

71.     As a result of Defendant's knowing and/ or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

Count III- Violation of the Minnesota Automatic Dialing-Announcing Devices Act

Minn. Stat. § 325E.26-31

72.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

73.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the Minn. Stat. § 325E.27.

74.     Pursuant to Minn. Stat. § 325E.31, Defendant is subject to a private right of action under Minn. Stat. § 8.31, and is subject to remedies including damages, reasonable costs and disbursements, reasonable attorney's fees, and injunctive relief.

Count IV– Violation of Fair Debt Collection Practices Act

15 U.S.C. § 1692 *et. seq.*

10

75.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

76.     The aforementioned conduct include multiple and numerous violations of the Fair Debt Collection Practices Act by Defendants including, but not limited to violations 15 U.S.C. §§ 1692d, 1692e(1), 1692e(5), 1692e(10), and 1692g.


Count V - Request for Declaratory Judgment Pursuant to Minn. Stat. § 555.01


77.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

78.     Plaintiff respectfully requests Declaratory Judgment that Plaintiff did not take out any loan related to the organization known as Empire Beauty School.


Count VI – Negligence


79.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

80.     In agreeing to collect Ms. Maks student loan account, Defendant had a duty to act in a reasonable and prudent manner with regard to the collection of her account.

81.     By participating in the national student loan program, specifically by collecting loans for the Department of Education, Defendant had a duty to accurately report student loan information to the Department.

11

82.     Defendant had a duty to Ms. Maks as a servicer of her account.

83.     Ms. Maks was also an intended third party beneficiary of Defendant's contractual duties to the Department of Education.

84.     Defendant breached its duty by failing to assure that the loans were, indeed, taken out by the alleged obligor.

85.     Defendant further breached its duty by failing to maintain reasonable records and processes to assure accuracy and reduce mistakes.

86.     Defendant further breached its duty in failing to investigate Ms. Maks' account after Ms. Maks informed Defendant that she believed her account to have accounting errors and/ or that she may be a victim of identity theft.

87.     Plaintiff was harmed by Defendant's breach in that she had over $43,000.00 wrongfully taken from her.

88.     Plaintiff was further harmed by Defendant's breach in that she had inaccurate information furnished about her, namely that she had defaulted on student loans.

89.     Plaintiff was further harmed by Defendant's breach in that she was asked to pay in excess of what she was legally required to pay.

90.     Plaintiff was harmed as a direct cause of Defendant's breach of its duty.


Count VII – Unjust Enrichment

91.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

92.     Defendant knowingly misrepresented information about Plaintiff to the Department of Education, and on information and belief as a direct result of transmitting this false information, it was enriched though payments from the Department of Education.

## Count VIII– Fraud

93.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

94.     On information and belief, Plaintiff alleges that Defendant is paid on a contingent basis for bringing student loan accounts current and/ or selling consolidation plans to borrowers.

95.     On information and belief, Plaintiff alleges that Defendant is not paid on accounts determined to be fraudulent.

96.     Defendant therefore intentionally omitted information when reporting to the Department of Education in order to ensure it would continue to be paid.

97.     Defendant knew the material fact that Plaintiff did not take out the loans in question.

98.     Defendant knew the material fact that Plaintiff's account balance was not correct and/ or contained material accounting errors.

99.     Despite this, Defendant falsely reported to the Department of Education the Plaintiff did indeed owe the loans in question and/ or that it had verified Plaintiff's account and information as due and owing.

100.    Defendant knowingly transmitted false information to the Department of Education that Plaintiff continued to refuse to pay her loans so that the Department of Education would not repurchase or otherwise pull back the loans in question.

101.   Plaintiff was harmed as a direct cause of Defendants' misrepresentations to the

Department of Education.

102.   Furthermore, Defendant stated that it was in possession of over $43,000.00 of Plaintiff's

money, but that it would keep the money yet not apply that money to Plaintiff's loans unless

Plaintiff entered into a new loan consolidation agreement or other repayment plan.

103.   Defendant was not in possession of $43,000.00 of Plaintiff's money.

104.   Plaintiff acted in reliance on Defendant's statement to her detriment.


### Count IX – Intentional Infliction of Emotional Distress

105.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as

though fully stated herein.

106.   Defendant willfully failed to report material information regarding Plaintiff's account or

accounts to the U.S. Department of Education so that Defendant could continue to collect fees

from the department for its collection services.

107.   As such Defendant willfully disregarded the rights of Plaintiff and thereby acted in an

extreme and outrageous manner.

108.   Furthermore, Defendant stated that it was in possession of over $43,000.00 of Plaintiff's

money, but that it would keep the money yet not apply that money to Plaintiff's loans unless

Plaintiff entered into a new loan consolidation agreement or other repayment plan.

109.   Plaintiff suffered severe distress from Defendant's statements that it had taken her money

yet refused to apply those funds to her loans, and from Defendant's statement that it was

preparing to sue her.

110.    Specifically, Plaintiff felt and was in fact, violated and/ or stolen from by an organization purporting to have quasi-governmental power.

111.    Plaintiff suffered from headaches, shortness of breath, frustration, fear, and anxiety and depression as a direct result of Defendant's intentional behavior and/ or statements.


### Jury Demand

112.    Plaintiff hereby demands a trial by jury.


### Prayer for Relief

WHEREFORE, Plaintiff, Tasha Marks, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

    a.    All actual compensatory damages suffered;

    b.    Statutory damages of $500.00 per violation, pursuant to 47 U.S.C. §227(b)(3)(B);

    c.    Statutory damages of $1,500.00 per violation, pursuant to 47 U.S.C. §227(b)(3)(C);

    d.    Statutory damages in an amount up to $1,000.00, pursuant to 15 U.S.C. §1692k(a)(2)(A);

    e.    injunctive relief prohibiting such conduct in the future;

    f.    reasonable attorney's fees, litigation expenses, and cost of suit; and

    g.    Any other relief deemed appropriate by this Honorable Court.

15

Dated: May 18, 2017

Respectfully Submitted,

MADGETT LAW, LLC

<u>s/ David J.S. Madgett</u>
David J.S. Madgett (#0390494)
619 South Tenth Street
Suite 301
Minneapolis, MN 55404
(612) 470-6529
dmadgett@madgettlaw.com

ATTORNEY FOR PLAINTIFF

## Acknowledgement

Plaintiff acknowledges that, pursuant to Minn. Stat. Sec. 549.21 sub. 2, the Court in its discretion may award costs, disbursements, reasonable attorney's fees and witness fees to the parties against whom costs, disbursements, reasonable attorney's fees and witness fees were charged in bad faith.

Dated: May 18, 2017

By: <u>/s/ David J.S. Madgett</u>
David J.S. Madgett
ATTORNEY FOR PLAINTIFF

16

 CT Corporation

**Service of Process Transmittal**
05/08/2017
CT Log Number 531186299

**TO:**   JOSEPH VANNEST
G C Services Corp.
6330 Gulfton St
Houston, TX 77081-1108

**RE:**   **Process Served in Minnesota**

**FOR:**   GC Services Limited Partnership  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Tasha Marks, Pltf. vs. G.C. Services L.P., Dft.<br>*Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | Fourth Judicial District Court, Hennepin County, MN<br>Case # NONE |
| **NATURE OF ACTION:** | Defendant(s) violated telephone consumer protection act, minnesota automatic dialing-announcing devices act and fair debt collection practices act due to which plaintiff(s) suffered damages |
| **ON WHOM PROCESS WAS SERVED:** | CT Corporation System, Inc, Saint Paul, MN |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 05/08/2017 at 14:05 |
| **JURISDICTION SERVED :** | Minnesota |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days of the date on which you received this Summons |
| **ATTORNEY(S) / SENDER(S):** | David J.S. Madgett<br>619 South Tenth Street<br>Suite 301<br>Minneapolis, MN 55404<br>(612) 470-6529 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/08/2017, Expected Purge Date: 05/13/2017<br><br>Image SOP<br><br>Email Notification,  Veronica Sanchez  VERONICA.SANCHEZ@GCSERV.COM<br><br>Email Notification,  JOSEPH VANNEST  JOE.VANNEST@GCSERV.COM<br><br>Email Notification,  Alyse McMenamin  Alyse.mcmenamin@gcserv.com<br><br>Email Notification,  Elaine Cruz  Elaine.cruz@gcserv.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | CT Corporation System, Inc<br>1010 Dale St. N.<br>Saint Paul, MN 55117-5603<br>216-802-2121 |

Page 1 of  1 / BS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.